**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.Y., M.Y., L.R., I.R., and S.R.**

**No. 20-0643** (Kanawha County 19-JA-735, 19-JA-736, 19-JA-737, 19-JA-738, and 19-JA-739)

## MEMORANDUM DECISION

Petitioner Mother K.Y., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's June 22, 2020, order terminating her parental rights to B.Y., M.Y., L.R., I.R., and S.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer R. Victor, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and terminating her parental rights rather than employing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2019, the DHHR filed a child abuse and neglect petition against petitioner alleging that she exposed the children to inappropriate caregivers and engaged in domestic violence. The DHHR alleged that petitioner filed a police report against her live-in boyfriend after he hit B.Y., causing welts and marks on the child's back, legs, and buttocks. Despite this violence against the child, petitioner allowed her boyfriend to move back in the home and continued to engage in domestic violence with him. Further, petitioner harbored her boyfriend from police despite knowing that he had outstanding warrants for strangling her and hitting B.Y. The DHHR also alleged that petitioner had prior Child Protective Services ("CPS") involvement following

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

allegations that I.R. was being sexually abused by an individual with whom petitioner lived.[2] In sum, the DHHR alleged that petitioner failed to protect her children or provide them with a safe home free from domestic violence. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in January of 2020, wherein petitioner stipulated to the allegations contained in the petition. Specifically, petitioner stipulated that she failed to protect the children from domestic violence and permitted the children to be supervised by her boyfriend even though he had physically and emotionally abused her and the children. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court also ordered the DHHR to provide petitioner with remedial services such as parenting and adult life skills classes, random drug screens, supervised visitation, domestic violence counseling, and a psychological evaluation.

Although petitioner complied with several services such as parenting and adult life skills classes, petitioner failed to consistently submit to drug screens and tested positive for marijuana when she did submit to screens. Petitioner underwent a psychological evaluation, the results of which indicated that she had a "highly guarded" prognosis for attaining minimally adequate parenting. The evaluating psychologist based petitioner's prognosis on her history of domestic violence, impaired judgment, chronic substance abuse, and "involvement of personality dysfunction." Thereafter, petitioner filed a motion for a post-adjudicatory improvement period.

In May of 2020, the circuit court held a dispositional hearing. The DHHR presented the testimony of petitioner's caseworker, who stated that petitioner complied with services but failed to internalize the content and continued testing positive for marijuana. The caseworker testified that, at some point during the proceedings, petitioner retrieved the children from their kinship placement with petitioner's grandmother and took them to her home. At the home, petitioner left the children to be supervised overnight by a new live-in boyfriend while she went to work. The caseworker also claimed that petitioner failed to acknowledge her substance abuse and claimed she tested positive for marijuana due to vaping a nicotine substance and consuming Mountain Dew. The caseworker testified that petitioner filed a grievance against the DHHR, essentially repudiating her stipulation at adjudication and claiming that she was not at fault regarding the incidents of domestic violence in her home. The caseworker conceded that petitioner aided the State in prosecuting her former boyfriend and obtained and maintained housing and employment.

Petitioner presented the testimony of her grandmother, who testified that she arranged for a family friend to watch the children and claimed that petitioner was not dating the man who the DHHR claimed was petitioner's boyfriend. Petitioner's service provider testified very favorably on petitioner's behalf, stating that petitioner complied with services, asked questions about the material, and was inquisitive and engaged. Petitioner testified that she was participating in services and cooperating with the State in prosecuting her former boyfriend. Petitioner stated that she would participate in any service required of her. However, petitioner denied telling her caseworker that she tested positive for marijuana due to consuming Mountain Dew.

---

[2]It does not appear that the allegations of sexual abuse were ever substantiated.

By order entered on June 22, 2020, the circuit court found that petitioner participated in most of the services offered, maintained employment, and obtained housing. The circuit court concluded, however, that petitioner failed to benefit from the services provided and failed to retain or implement the information provided. The circuit court noted that petitioner failed to adequately adhere to the random drug screening protocols, offered "unlikely and absurd" excuses for her positive drug screens, and denied or minimized the impact of her substance abuse. The circuit court found that petitioner repudiated her stipulation at adjudication by filing a grievance against CPS in which she denied responsibility for the circumstances that led to the petition's filing. The circuit court further found that petitioner failed to provide adequate supervision for her children, allowed the children to live with her during the proceedings in violation of court order, arranged for a new boyfriend to care for the children, was dishonest about the arrangement, and conspired with her grandmother to conceal the situation. The circuit court found that petitioner's testimony in the matter was not credible. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. It is from the June 22, 2020, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. Petitioner contends that she acknowledged that her toxic relationships harmed her children by exposing them to domestic violence. Petitioner states that, contrary to the guardian's claims, her grievance against CPS did "nothing to take away from [her] acceptance of responsibility." The grievance complains only of not having been granted an improvement period and being told that her rights would be terminated despite her participation in services. Petitioner avers that her testimony and that of her grandmother established that the

---

[3]According to the guardian, the children were placed with their respective fathers with a permanency plan to remain in their care.

children were left in the care of a family friend. No evidence was ever presented that the family friend was a risk to the children or abused them in any way. Petitioner further argues that she fully participated in domestic violence counseling and other services. Although the evaluating psychologist's report indicated that petitioner would be unable to grasp the concepts necessary to protect herself and the children from abusive relationships, petitioner's service provider testified that petitioner was gaining insight and would be able to protect herself and the children. As such, petitioner claims that the circuit court was clearly wrong in finding that she failed to demonstrate that she was likely to fully participate in an improvement period.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (quoting W. Va. Code § 49-6-12(b)(2) (1996)).

Contrary to her claims, petitioner fails to establish that she was entitled to an improvement period. Following the close of evidence at the dispositional hearing, the circuit court found that petitioner failed to benefit from the services provided and failed to retain or implement the information provided. Indeed, petitioner retrieved the children from her grandmother and allowed them to stay under the care of an unapproved boyfriend. While petitioner claims that both she and the grandmother testified that the grandmother arranged for the "family friend" to watch the children, the circuit court found that petitioner's testimony was not credible. We find no error in this determination, as the circuit court was free to make a credibility determination in weighing that evidence. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Moreover, the circuit court found that petitioner failed to adequately adhere to the random drug screening protocols and offered absurd excuses for her positive screens, such as vaping a nicotine substance or consuming Mountain Dew. The record demonstrates that petitioner failed to submit to several screens and tested positive for marijuana when she did submit to screens. Lastly, petitioner's psychological evaluation report indicated a "highly guarded" prognosis for attaining minimally adequate parenting due, in part, to her impaired judgment and chronic substance abuse. Accordingly, it is clear that, despite the provision of several services throughout the proceedings, petitioner failed to adequately comply or show progress, thereby demonstrating that she was not likely to fully participate in an improvement period. As such, we find no error here.

Petitioner also argues that the circuit court erred in terminating her parental rights. Petitioner argues that, instead, the circuit court should have placed the children with their respective fathers and dismissed the case without terminating her parental rights, giving petitioner the opportunity to request a modification of disposition if she "had evidence to convince the court that there had been a change in circumstances and that a modification was in the best interests of

the children." Petitioner also claims that, under the circumstances, imposing disposition pursuant to West Virginia Code § 49-4-604(c)(5) would have been appropriate.[4] Petitioner contends this disposition is particularly fitting since she is permitted to visit with the children at the fathers' discretion and it would have allowed her to work towards regaining custody of the children. She notes that there is no risk of disrupting any bonds of the children as they are not in foster placements. Based on these assertions, petitioner concludes that "[t]here is no reason not to permit the legal status of the children to allow [petitioner] to petition . . . for modification of . . . parenting time" and that termination of her rights was erroneous.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future as she failed to adequately respond to services designed to reduce or prevent the abuse and neglect of her children. As shown above, petitioner failed to consistently submit to drug screens throughout the proceedings and tested positive for marijuana when she did submit to drug screens. Further, petitioner allowed the children to stay in her home against court order, allowed her boyfriend to watch the children while she was at work, and attempted to conceal the situation from her caseworker. This behavior is especially concerning given that the conditions which led to the petition's filing were based on petitioner allowing the children to be supervised by inappropriate persons. While petitioner claims that her parental rights should not have been terminated because the fathers retain their parental rights to the children and can allow petitioner to visit with the children at their discretion, this Court has held that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Finally, as demonstrated above, petitioner filed a grievance against CPS wherein she denied responsibility for the

---

[4]West Virginia Code § 49-4-604(c)(5) provides that

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

circumstances which led to the petition's filing. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. While petitioner claims the circuit court should have imposed a less-restrictive alternative to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). In sum, the circuit court's findings are fully supported by the record below, and we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 22, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 2, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton